T.C. Memo. 1996-165


UNITED STATES TAX COURT



ANNE C. SOMERVILL, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 14222-93.                    Filed April 1, 1996.


A. Kelly Williams, for petitioner.

Wanda M. Cohen, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

FAY, Judge:  Respondent determined deficiencies in Federal

individual income tax against petitioner as follows:

|  |  | Additions to Tax and Increased Interest | |
|  |  | Sec. | Sec. |
| Year | Deficiency | 6621(c) | 6659 |
| 1976 | $1,682 | [1] | -- |
| 1977 | 37,851 | [1] | -- |
| 1978 | 36,933 | [1] | -- |
| 1979 | 31,606 | [1] | -- |
| 1980 | 21,615 | [1] | -- |
| 1981 | 25,967 | [1] | $7,790 |

1982                34,128              [1]                10,255

[1]To be determined.

All section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

After concessions, the issue for decision is whether petitioner qualifies as an innocent spouse with respect to any portion of the income tax deficiencies.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation and the attached exhibits are incorporated herein by this reference.

Petitioner resided in Harlingen, Texas, at the time the petition was filed. Petitioner and her then husband, Robert C. Somervill,[1] filed joint Federal income tax returns for all of the years in issue. Respondent issued a notice of deficiency on April 2, 1993, for the tax years 1976 through 1982. Respondent's notice of deficiency disallowed in full the ordinary losses from an investment in Oxnard Properties, a partnership, claimed by petitioner and Robert Somervill on their joint Federal income tax returns for certain of the years in issue. Additionally, the notice disallowed an investment tax credit carryback from 1979 to

_____

[1]Petitioner and Robert C. Somervill divorced in 1985 but were married throughout the years in issue.

1976 in the amount of $1,682. Furthermore, the notice disallowed the ordinary losses claimed from an investment in Progressive Properties, a partnership, in the years 1980, 1981, and 1982.

Petitioner was raised in a small town of 1,500 people. She completed high school and continued on to junior college for 2 years. Petitioner then attended Northwestern University in Evanston, Illinois, and was awarded a bachelor of arts degree in psychology. Immediately after completing college, petitioner worked at Northwestern University's medical school answering phones in the registrar's office.

Petitioner met and married Robert Somervill, a medical student at Northwestern University, in 1957. Their first child was born 13 months thereafter, in 1959, their second in 1962, their third in 1964, and twins in 1965. Petitioner and her family moved to San Benito, Texas, in 1967 and remained there for all of the years in issue.

In 1977, petitioner received her real estate license and began working in a real estate office as an agent. Petitioner testified that she was not a successful agent, and that her first sale took place in 1983. However, a joint Federal income tax return filed for the 1977 tax year reflects a net profit from petitioner's real estate activity. In 1983, petitioner became a real estate broker, the requirements for which are more burdensome than those for a real estate agent.

Petitioner's husband worked as a physician during the years in issue. Petitioner had very little involvement in her husband's medical practice. She testified that her involvement was limited to picking up a bank bag from her husband's office and delivering it to the bank.

Petitioner maintained her own checking account during the years in issue. Petitioner would pay for food, the family's clothing, and gas for her car from her checking account. She would also pay the family's utility bills out of her checking account. When petitioner needed money to deposit in her checking account, she would ask Pamela Mitchell, her husband's secretary, to write her a check.

Petitioner did not live a lavish lifestyle during the years in issue. She and her family lived in an old farmhouse that was simply furnished. Petitioner maintained a social membership at the Harlingen Country Club, but the record is unclear as to what year the membership began. Petitioner was active in a garden club during the years in issue. She even held the position of secretary and president for 1 year.

Petitioner and her husband acquired several properties in San Benito during the years in issue. During 1978 they acquired the "East Jackson" property, the 1602 Sunshine Strip property, the 1801 Sunshine property, and the 1045 South Commerce property. In 1979, petitioner and her husband acquired property on West

Jackson.  In 1981, they acquired property at 1616 South Carolina and, in 1982, property at 2501 North 25th Street.

During the years in issue, Tim Radder, a certified public accountant (C.P.A.), prepared petitioner and her husband's returns.  Petitioner's husband's secretary would compile the information needed by the C.P.A. to complete the tax returns.  Petitioner would compile the information relating to the expenses associated with her own real estate activities and any charitable contributions that she made.  Petitioner would sign the return when her husband's secretary called to tell her the completed return was available.  Petitioner testified that no one ever explained to her the different deductions or schedules on her tax return, nor did she ask anyone to explain the return or the deductions on it.  Petitioner further testified, however, that no one prevented her from examining the returns in issue; instead, she simply chose not to examine them.

Petitioner testified at trial that she had no knowledge of her husband's investments in either the Oxnard Properties or Progressive Properties partnerships.  However, Sol Finkelman or a member of his accounting firm, petitioner, and Robert Somervill met for lunch or dinner, during which there was some discussion of the Oxnard Properties and Progressive Properties.  Petitioner testified that she did not understand what was being discussed as to Oxnard Properties and Progressive Properties.  Nonetheless,

petitioner testified that, while she had the opportunity to ask questions during these meetings, she did not do so.

On July 12, 1988, a Form 906, Closing Agreement On Final Determination Covering Specific Matters, relating to Progressive Properties was executed. Pursuant to that agreement petitioner agreed to be bound by the final decision in <u>Finkelman v. Commissioner</u>, T.C. Memo 1989-72, affd. without published opinion 937 F.2d 612 (9th Cir. 1991). Also on July 12, 1988, another Form 906 was executed, this one relating to Oxnard Properties. Pursuant to this Form 906, petitioner agreed to be bound by the final decision in <u>Finkelman v. Commissioner</u>, <u>supra</u>. Amongst other issues, <u>Finkelman</u> had at issue the deductibility of losses from investment in Oxnard Properties and Progressive Properties. Once again, petitioner testified that she signed the Form 906 simply because she was instructed by her husband's secretary to do so. On February 16, 1989, this Court filed an opinion holding that the losses generated by certain partnerships, including Oxnard Properties and Progressive Properties, were disallowed. <u>Id.</u>

## OPINION

When a husband and wife file a joint Federal income tax return, liability for the tax due is joint and several. Sec. 6013(d)(3). However, an "innocent spouse" can find relief under the provisions of section 6013(e). In order to invoke the provisions of section 6013(e), the spouse seeking relief must

satisfy the following requirements: (1) That a joint return was filed; (2) that, on the return, there is a substantial understatement of tax; (3) that the understatement is attributable to grossly erroneous items of the other spouse; (4) that the spouse seeking relief did not know, and had no reason to know, of the substantial understatements of tax; and (5) considering all the facts and circumstances, it would be inequitable to hold the spouse liable for the deficiencies in income tax. Sec. 6013(e). Failure to meet any one of the statutory requirements will prevent petitioner from qualifying for relief under section 6013(e). Bokum v. Commissioner, 992 F.2d 1132 (11th Cir. 1993), affg. 94 T.C. 126, 138 (1990); Purcell v. Commissioner, 826 F.2d 470, 473 (6th Cir. 1987), affg. 86 T.C. 228 (1986).

Petitioner bears the burden of proving that she is entitled to relief as an innocent spouse under section 6013(e). Rule 142(a). The parties agree that petitioner and her then husband filed joint Federal income tax returns for the years in issue and that there was on each return a substantial understatement of tax attributable to items of his. Respondent contends, however, that petitioner is not entitled to innocent spouse relief for the taxable years in issue because the understatements of tax on the subject returns are not attributable to grossly erroneous items, petitioner knew or had reason to know of the understatements, and it is not inequitable to hold petitioner liable for the deficiencies in tax.

For purposes of section 6013(e), grossly erroneous items are defined as "any item of gross income attributable to such spouse which is omitted from gross income," and "any claim of a deduction, credit, or basis by such spouse in an amount for which there is no basis in fact or law."  Sec. 6013(e)(2)(A) and (B); Purcell v. Commissioner, supra at 474.  Ordinarily, a deduction has no basis in law or fact if it is "'fraudulent,' 'frivolous,' 'phony,' or 'groundless.'"  Bokum v. Commissioner, supra at 1142 (quoting Stevens v. Commissioner, 872 F.2d 1499, 1504 n.6 (11th Cir. 1989), affg. T.C. Memo. 1988-63); see Ness v. Commissioner, 954 F.2d 1495 (9th Cir. 1992), revg. 94 T.C. 784 (1990).  A deduction has no basis in fact when the expense for which it is claimed was never, in fact, made.  Douglas v. Commissioner, 86 T.C. 758, 762 (1986).  A deduction has no basis in law when the expense, even if made, does not qualify as deductible expense under well-settled legal principles or when no substantial legal argument can be made in support of its deductibility.  Id.  The fact that the deduction has been disallowed does not, however, dictate a finding that the deduction is "grossly erroneous".  Ness v. Commissioner, supra at 1498.

The deductions in question arose from petitioner's husband's investment in Progressive Properties and Oxnard Properties, partnerships formed and managed by Sol Finkelman.  The losses claimed by Progressive and Oxnard for the years in issue, and the distributive shares of those losses claimed by one of the partners,

were among the deductions whose deductibility was decided in a test case.  Finkelman v. Commissioner, T.C. Memo. 1989-72.

The major issue considered in Finkelman involved the tax consequences of leveraged real estate transactions.  The focus of the Court's inquiry was whether the transactions should be disregarded for Federal income tax purposes because they lacked economic substance and/or were primarily tax motivated.  The Court determined that the transactions were lacking in economic substance and profit objective and, accordingly, were not to be respected for tax purposes.  Although the deductions were not allowed, the Court declined to sustain the section 6653(a) negligence additions to tax against the promoter.  In so holding, the Court explained that the taxpayer's favorable financing argument was not an "untenable" theory, that it had "some support in the case law", and that "the claimed losses were supported by a credible and unprecedented (albeit erroneous) theory".

Petitioner claims that the holding in Finkelman that the transactions lacked economic substance and that there was no profit objective mandates the conclusion that the deductions can have no basis in law.  We cannot agree with petitioner.

The Court in Finkelman acknowledged that, although the transactions were not reasonable, "That does not, however, render petitioner's theory untenable."  Finkelman v. Commissioner, supra.  Despite the Court's rejection of the taxpayer's arguments in that case, they were "not without some support in the case

law."   Id.   Moreover, the Court stated that "the claimed losses were supported by a credible and unprecedented (albeit erroneous) theory".   Our opinion in Finkelman makes clear that the deductions, while disallowed, were not frivolous, fraudulent, or phony.

We find that, under the circumstances presented herein, the deductions are not attributable to grossly erroneous items within the meaning of section 6013(e)(2)(B).   Petitioner is, therefore, not relieved of joint liability with respect to any part of the income tax deficiencies.

Decision will be entered for

respondent.